UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                      :        Chapter 11
                                            :
DANA CORPORATION, *et al*.,                 :        Case No. 06-10354 (BRL)
                                            :
                       Debtor.              :        (Jointly Administered)
---------------------------------------------------------------X

## <u>NOTICE OF APPEAL</u>

Pursuant to 28 U.S.C. § 158(a), Forge Precision Company ("Forge"), by and through its

undersigned counsel, Rabinowitz, Lubetkin & Tully, L.L.C. and Cohen, Lerner & Rabinovitz,

hereby appeals to the United States District Court for the Southern District of New York from

the determinations made by the United States Bankruptcy Court for the Southern District of New

York on October 17, 2007, denying Forge's cross-motion for relief from the automatic stay, and

on November 14, 2007, disallowing Forge' claim, as set forth in that Memorandum Decision

Granting Summary Judgment Disallowing Claim, a copy of which is appended hereto as Exhibit

"A," and with respect to which no Orders have yet been entered on the Bankruptcy Court docket.

The parties to the appeal and the names, addresses, and telephone numbers of their

respective attorneys are as follows:

Jonathan I. Rabinowitz, Esq.
Mary Ellen Tully, Esq.
Rabinowitz, Lubetkin & Tully, L.L.C.
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
*Attorneys for Forge Precision Company*

Jeff B. Ellman, Esq.
Brett J. Berlin, Esq.
Jones Day
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
(404) 521-3939
*Counsel for the Debtors*

Corinne Ball, Esq.
Richard H. Engman, Esq.
Jones Day
222 East 41st Street
New York, NY 10017
(212) 326-3939
*Counsel for the Debtors*

Heather Lennox, Esq.
Carl E. Black, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939
*Counsel for the Debtors*

Thomas Mayer, Esq.
Kenneth H. Eckstein, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
*Counsel for the Official Committee of Unsecured Creditors*

Dated: November 26, 2007
       New York, New York

Respectfully Submitted,


/s/ Jonathan I. Rabinowitz
Jonathan I. Rabinowitz (JR9356)
RABINOWITZ, LUBETKIN & TULLY, L.L.C.
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
Phone: (973) 597-9100
Fax:    (973) 597-9119
E-Mail:  jrabinowitz@rltlawfirm.com

      and

Harvey R. Weingarden, Esq.
COHEN, LERNER & RABINOVITZ
26862 Woodward Avenue, Suite 200
Royal Oak, MI  48067
Phone: (248) 691-2200
Fax:    (248) 691-2214


F:\Client_Files\A-M\Forge Precision\Response to Reply - Consolidated Debtors.doc

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 11

    Dana Corporation, *et al.*,                           Case No. 06-10354 (BRL)

        Debtors,
-------------------------------------------------------------x

## MEMORANDUM DECISION GRANTING
## SUMMARY JUDGMENT DISALLOWING CLAIM

      Dana Corporation ("Dana") and forty of its domestic direct and indirect subsidiaries,

(collectively with Dana, the "Debtors"), moved to disallow the claim of Forge Precision

Company ("Forge").  Forge filed an objection and cross-moved for abstention and relief from the

automatic stay to allow the United States District Court for the Eastern District of Michigan (the

"District Court") to adjudicate the Forge claim.  At the hearing on October 17, 2007, this Court

denied the motion for abstention and stay relief and reserved decision on the Debtors' motion to

disallow the Forge claim.  For the reasons set forth below, the Forge claim is disallowed.

**Background**

      The Forge claim arises from a supply relationship under which Forge supplied a certain

automotive component subpart to Dana during a six-month period in 2004.  Dana allegedly

became dissatisfied with Forge's pricing and performance and as a result, terminated the supply

relationship.  Forge contends that Dana's termination of the supply relationship was a breach of

contract.  Forge further alleges that Dana defrauded it and engaged in a scheme whereby Dana

wrongfully disclosed Forge's production know-how and transferred one of its production tools to

a competitor, who subsequently replaced it as a supplier of the part to Dana.

Approximately one month after the termination of the supply relationship, on November 23, 2004, Forge commenced a lawsuit (the "Lawsuit"), in the State Court in Michigan, asserting these causes of action against Dana. On May 4, 2005, Dana removed the Lawsuit to the District Court in Michigan and on September 26, 2005, Dana filed a motion for summary judgment. When Dana filed its chapter 11 petitions on March 4, 2006 (the "Petition Date"), the Lawsuit was stayed and Dana filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in the District Court. On March 28, 2006, the District Court administratively closed the Lawsuit because of the automatic stay. As of the Petition Date, the District Court had not ruled on summary judgment. Forge filed its proof of claim in these chapter 11 cases, asserting the same causes of action as the Lawsuit and seeking damages of $4,156,000 for alleged lost profits.

*The Purchase Orders*

On March 22, 2004, Dana issued a tooling purchase order (the "Tooling Purchase Order") to have Forge obtain certain tooling it would need to manufacture the "flange half," (the "Part") of the component subpart called a "differential case," which Dana uses to build rear axles. The first page of the Tooling Purchase Order stated that title ownership of the tooling Forge obtained was vested in Dana or its customers, as applicable. Specifically, the face of the Tooling Purchase Order provided that "[t]he Supplier agrees that the tools, dies, and/or patterns specified hereon, are the property of Dana Corporation . . . ." (Tooling Purchase Order at p. 1.) Forge contends that upon its objection to this language, it was removed from future purchase orders although the subsequent order Forge refers to is not a Tooling Purchase Order but a "blanket" purchase order (the "Blanket Purchase Order") which Dana issued on July 1, 2004.

2

Although the Blanket Purchase Order did not contain such language on the first page, paragraph 17 of the Blanket Purchase Order did provide that:

> All dies, jigs, fixtures, drawings, molds, patterns, templates, gauges and the like that Dana provides to Seller or pays Seller to make or buy for use in performing this Order . . . are at [all] times the personal property of Dana or Dana's customer, as the case may be.

(Blanket Purchase Order at ¶ 17.) The Blanket Purchase Order was for an unspecified duration and an unspecified quantity of the Part.[1] On October 12, 2004, Dana terminated the arrangement. Dana contends that it had three reasons for ending its relationship with Forge – Dana's desire to consolidate its supplier base, Forge's pricing, and quality concerns with Forge's production of the Part. Specifically, Dana asserts that Forge's pricing for the Part was higher than Dana believed was appropriate.[2] In addition, during the short period during which Forge supplied the Part, Dana contends that Forge demonstrated an inability to comply with the production specifications for the Part. Because of these concerns, Dana contends that it exercised its rights, under paragraph 22 of the Blanket Purchase Order, to terminate the Order "for convenience at any time by written notice to Seller." *See* Blanket Purchase Order at ¶ 22. Thereafter, Dana began obtaining the Part from B&C Corporation ("B&C") as a replacement supplier to Forge.

Forge contends that, an email dated July 29, 2004 (the "July email"), from the Chief Buyer at Dana represented that the Blanket Purchase Order would be long-term and would not

---

[1] Under the Blanket Purchase Order, Dana would issue "releases" requiring Forge to deliver certain quantities of the flange half at specified times.

[2] Both sides acknowledge the rush to replace an earlier supplier and the fact that the price was higher because of that urgency.

terminate without "extensive dialogue." Based upon these representations, Forge maintains that it bolstered its workforce, resources and equipment dedicated to the Dana Purchase Order. Forge also contends that Dana fraudulently induced Forge to share its proprietary cutting tool which was required to make the Part with B&C, a competitor, on the alleged grounds that Dana was seeking to improve B&C's production of another part - the "plain half."

The complaint against Dana in the Lawsuit alleges breach of contract and fraud. As conceded by Forge, the facts are undisputed that Dana and Forge entered into a contract whereby Forge agreed to manufacture/supply and Dana agreed to buy the Part as evidenced by the Blanket Purchase Order for an unspecified duration and an unspecified quantity of the Part. Because the Blanket Purchase Order required ongoing communications with Dana regarding the production/shipment schedule that Dana demanded, Forge contends that its contract with Dana was thereafter modified by the July email changing the termination provisions of the Blanket Purchase Order such that Dana no longer had the absolute right to terminate the Order "for convenience at any time by written notice to Seller." *See* Blanket Purchase Order at ¶ 22.[3] Thus, Forge's breach of contract claim depends entirely on the premise that the July email from Dana was a binding and enforceable modification to the Blanket Purchase Order obligating Dana to have "extensive dialogue" with Forge before terminating the relationship.

---

[3] Paragraph 22 further provides that "On termination, Dana will be liable to Seller solely for unpaid invoices for conforming goods previously shipped and for Seller's reasonable, documented costs of raw materials, work-in-process and finished goods that cannot be canceled without penalty or sold in the general trade, not to exceed the volumes specified in this order . . . and payable only after Dana's receipt of same."

Forge also asserts a claim that Dana wrongfully disclosed certain of Forge's production know-how to B&C and defrauded Forge into delivering a cutting tool to B&C. It is clear however from the Purchase Orders that tooling "and the like" is the property of "Dana or Dana's customer" and its disposition was Dana's to make. *See* Blanket Purchase Order, ¶ 17.

In all, Forge alleges damages in the in the liquidated amount of $4,156,000 based on a calculation of lost profits it would have earned if Dana continued to purchase the Part from Forge through December 31, 2009.

**Discussion**

A "blanket" purchase order of the type at issue here is not a contract for a specific volume of parts, nor is it a "requirements" contract obligating the purchaser to continue to buy parts from the supplier. *See, e.g., Advanced Plastics Corp. v. White Consol. Indus.*, 828 F. Supp. 484, 487 (E.D. Mich. 1993) *aff'd.* 47 F.3d 1167 (6th Cir. 1995). Each time a specific release under a blanket purchase order is fulfilled by the supplier and paid by the purchaser, the contractual relationship in essence ends unless the purchaser issues another release. *Id.* at 488. Thus, "where no minimum duration is stated in a contract, the general rule is that it is terminable at will by either party." *Id.* at 489 *citing Zidell Explorations, Inc. v. Conval International, Limited,* 719 F.2d 1465, 1473 (9th Cir. 1983).

Dana, as a Tier I supplier is subject to these types of contracts with the original equipment auto manufacturers that Dana supplies as well as Dana's own suppliers. These types of contracts that are terminable at will and that have no set quantity or duration are commonplace in the automotive industry in Michigan.

In addition to providing that Dana had the right to terminate the order for convenience at any time, the Blanket Purchase Order also provided that

> This Purchase Order is the entire contract between the Dana . . . entity and the Seller named on the face of the Order with respect to the goods or materials ordered . . . and it supersedes any prior communications or agreements between the parties about the goods. . . . These terms will apply to all purchases made by Dana under this order, except to the extent modified or waived by specific different terms stated on the face of the order, regardless of any different terms contained in Dana's or Seller's documents or on their internet web sites and regardless of course of dealing or industry practice to the contrary.

*See* Blanket Purchase Order at ¶ 1.[4]

Forge's contention that a single email out of dozens from one Dana employee somehow changed the terminable at will nature of the Blanket Purchase Order is meritless. The email merely express an opinion on the part of one employee; it does not contain any definite terms. It also warns that Dana is unable to do any final sourcing analysis at that time. The statement that Dana would continue ordering parts until an "extensive dialogue" does not constitute a new contract and does define an obligation with anything approaching reasonable certainty. *See McInerney v. Detroit Trust Co.*, 279 Mich. 42, 49-50 (Mich.1937) ("Evidence to establish a contract must show something more than a mere possibility, guess, or conjecture."); *Kiley v.*

---

[4] The Blanket Purchase Order also provides that
Seller's written acknowledgment of this Order, commencement of work on the goods, or delivery of any goods hereunder will constitute its acceptance of these terms. Without Dana's written consent, no additional or different terms proposed by seller in its acknowledgment or otherwise will be effective to modify this order and seller will be deemed to have accepted the order without such modifications.

*See* Blanket Purchase Order at ¶ 2.

6

*First Nat. Bank of Maryland*, 649 A.2d 1145 (Md.App. 1994)("An enforceable contract must express with definiteness and certainty the nature and extent of a party's obligations.")

### The Economic Loss Doctrine

Forge's wrongful disclosure and fraud claims also fail as a matter of law under the economic loss doctrine which bars tort recovery and limits remedies to those available under the Uniform Commercial Code (the "UCC") where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic. *See Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512 (Mich.1992). In *Neibarger*, the Court found that if an aggrieved commercial purchaser were allowed to sue in tort to recover economic loss, the UCC would be rendered meaningless and "contract law would drown in a sea of tort." While *Neibarger* dealt with an aggrieved purchaser, the Sixth Circuit Court of Appeals has held that the doctrine applied regardless of whether the buyer or the seller was the plaintiff. *See Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320-21 (6th Cir. 1999)(Explaining that the "economic loss doctrine helps ensure that contract claims are resolved by contract law"); *see also General Motors Corp. v. Alumi-Bunk, Inc.*, 2007 WL 2118796, *5 (Mich. App. July 24, 2007)(where the defendant was the purchaser and the dispute did not concern defective goods, the Michigan Court of Appeals held that the economic loss doctrine mandates that disputes regarding a sale be governed by the UCC.). Here the Blanket Purchase Order is an agreement for the sale of goods governed by the UCC. Forge's fraud and wrongful disclosure claims seek to recover the same damages for economic loss as its breach of contract claim and are barred by the doctrine.

Forge also argues that the doctrine does not apply where there is fraud in the inducement. "Fraud in the inducement however, addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 374 (1995)(explaining that misrepresentations relating to the breaching party's performance of the contract do not give rise to an independent cause of action in tort.). A fraud in the inducement claim permits redress of misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller. *Huber v. Crop Production Services, Inc.*, 2007 WL 2746625, *5 (E.D. Mich. Sept. 19, 2007). There is no showing by Forge of fraud in the inducement. The July email was sent subsequent to the Blanket Purchase Order and during the course of the parties performance thereunder. "Like the plaintiffs' other tort claims, its fraud claim is undergirded by factual allegations identical to those supporting their breach of contract counts." *Id.*

Moreover, for the exception to the economic loss doctrine to apply, the allegations of fraud must be extraneous to the contract dispute. *See Dinsmore Instrument*, 199 F.3d at 320-21; *see also Huron Tool*, 209 Mich. App. at 374. As explained by the Michigan Court of Appeals, the difference between fraud in the inducement and other kinds of fraud is that the former is extraneous to the contract while the latter is interwoven with the performance of the contact, is another thread in the fabric of the plaintiff's contract claim and does not give rise to an independent cause of action in tort. *Huron Tool*, 209 Mich. App. at 373.

**Conclusion**

8

Dana's Blanket Purchase Order with Forge Precision established the terms of a supply relationship for an indefinite duration, terminable at will by either party, without any commitment for the purchase of a particular quantity of goods. Dana's termination of the supply relationship was not a breach and accordingly, for all of the reasons set forth, the Forge claim is disallowed.

SETTLE AN ORDER CONSISTENT WITH THIS DECISION.

Dated: New York, New York
     November 14, 2007

                       /s/ Burton R. Lifland
                       United States Bankruptcy Judge